CITY OF NEW YORK v. BROOKLYN UNION ELEVATED R. CO.

(Supreme Court, Trial Term, New York County. March 2, 1916.)

STREET RAILROADS ☞31—USE OF BRIDGE—CONTRACTS—DISCHARGE BY INCONSISTENT AGREEMENT.

 A street railroad company contracted to pay tolls to the city of New York for the operation of cars across the Williamsburgh Bridge. Later another contract was made by the road and the city, whereby compensation to the city was provided by the road's promise of an equal division of "the income, earnings, and profits of the railroad and the existing railroads"; the amount so to be divided being gross receipts less specified deductions, among which deductions were included "all expenses, exclusive of maintenance actually and necessarily incurred by the lessee [the road] in the operation of the railroad and the existing railroads." *Held*, that the last clause of the contract did not include the expense of tolls payable under the earlier contract, and that the two contracts were necessarily inconsistent; the latter covering the whole subject of compensation for the use of the tracks over the bridge, so that the road was liable only for the charges provided therein, a discharge of the first agreement resulting from the inconsistency.

 [Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 67, 68; Dec. Dig. ☞31.]

Action by the City of New York against the Brooklyn Union Elevated Railroad Company. Defendant's motion for directed verdict granted.

Lamar Hardy, of New York City, for plaintiff.
Geo. D. Yeomans, of Brooklyn, for defendant.

ERLANGER, J. The plaintiff sues to recover the amount of certain tolls for the operation of cars across the Williamsburgh Bridge, alleged to have accrued under a contract entered into between the defendant Brooklyn Elevated Railroad Company and the commissioner of bridges on April 26, 1907. The defense is that during the period covered by the claim in suit—August, 1913, to June, 1914—the cars were operated under a new and different agreement with respect to the compensation payable to the city, the plaintiff, which agreement is described in the record as "contract No. 4." There would seem to be no question, and none is raised, that the defendant New York Consolidated Railroad Company has duly succeeded to the rights conferred and has assumed all the obligations of the respective corporations with which these two agreements were made upon the part of the city, and the actual point for determination is whether the earlier contract of 1907 was superseded by contract No. 4, so far as concerns the subject of the tolls or compensation to be paid for the use of the bridge tracks. This last contract was made pursuant to legislative authority by the Public Service Commission in behalf of the city with the New York Municipal Railway Corporation on March 19, 1913. It provided for a comprehensive scheme of railway operation in the boroughs of Manhattan and Brooklyn over lines owned or controlled by the railway corporation, and styled in the contract "existing railroads," in connection with lines to be built by the city, with contribution by the railway corporation, and distinguished in the contract as "the railroad." When defining the rights accorded to the operating company in the form of a "lease" of "the railroad," the contract provides (article 11, par. 8):

"The word 'railroad' shall also include a railroad right of way, as hereinafter described, over each of the existing bridges over the East River, other than the New York and Brooklyn Bridge, on which trackage rights are claimed by the lessee."

And in Article 4 the Broadway-Fourth Avenue Line is described as proceeding "to the Williamsburgh Bridge and thence as a two-track railroad over the Manhattan approach to the Williamsburgh Bridge, and over the main span of the Williamsburgh Bridge to the Brooklyn approach thereto." Compensation to the city for the use of "the railroad" is provided by the "lessee's" promise of an equal division of "the income, earnings and profits of the railroad and the existing railroads" (article 50), the amount so to be divided being the gross receipts, less specified deductions, among which deductions are included (article 49, subd. 3) "all expenses, exclusive of maintenance, actually and necessarily incurred by the lessee in the operation of the railroad and the existing railroads."

It is the contention of the city that the last clause would suffice to include the expense of tolls payable under the trackage agreement of 1907; hence that such agreement and contract No. 4 are not necessarily inconsistent, but could be read and enforced together. To my mind, this construction would do violence to the apparent purpose and intent of the later contract. If the earlier lease or trackage agreement were deemed to be preserved, there was no object in the inclusion of a "railroad right of way" over the Williamsburgh Bridge, as a part of the "railroad"; the existing right to use the tracks would have required the classification of this part of the line as among "existing railroads," and, as such, excluded from "the railroad" in the very manner adopted with respect to the right of way over the Brooklyn Bridge (article 2, par. 8) "on which trackage rights are claimed by the lessee." The actual subject of trackage rights over these different bridges was evidently before the parties when this later contract was made. As to the Brooklyn Bridge, the lessee asserted an existing right, and it was recognized; as to the Williamsburgh Bridge, an existing right was either abandoned, or, if asserted, was not recognized, for the classification of this part of the railway line as "the railroad," according to the contract's definition of that term, removes it from the class of trackage operated by the lessee pursuant to any prior existing right.

There appears to be no question of a conflict of official duty as between the commissioner of bridges and the Public Service Commission in the making of the agreement of 1907, and in its discharge by the agreement of 1913. In each instance, the city was the principal, and the contract was within the authority delegated to the agent or agents by whom it was concluded. In my opinion, the subject of compensation for the use of the tracks was fully covered by contract No. 4, in a manner inconsistent with the agreement of 1907, importing a discharge of that agreement as a matter of intention. 3 Elliott on Contracts, §§ 1859, 1865. There can be no serious claim of doubt, upon the facts, that the right of way over the Williamsburgh Bridge involved the use of the same tracks which were the subject of the agreement of 1907, and that the defendant New York Consolidated Railroad Company actually proceeded to operate those tracks pursuant to the provision of contract No. 4, when complying with the resolution of the Public Service Commission that the Center street loop was ready for operation.

Defendants' Exhibits Nos. 10, 11, and 12 do not appear to me to be material to the issues, and I shall accordingly grant the plaintiff's motion to strike out, as to which motions decision was reserved. Defendants' motion for direction of a verdict granted. Exception to plaintiff. Thirty days' stay; sixty days to make a case.